UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DAVID LEE FISHER and | ) | Case No. 02-52442 |
| SYLVIA W. FISHER, | ) | |
| | ) | |
|    Debtors. | ) | |
| _____ | ) | |
| EDWIN H. FERGUSON, JR., | ) | |
| TRUSTEE, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
|    vs. | ) | 06-6077 |
| | ) | |
| DAVID LEE FISHER, and | ) | |
| SYLVIA W. FISHER | ) | |
| | ) | |
|    Defendant. | ) | |
| _____ | ) | |

**ORDER AND OPINION**

This adversary proceeding came on before the Court on October 30, 2007.  Edwin H.

Ferguson, Jr. appeared on behalf of himself, the Plaintiff, hereinafter the Chapter 7 Trustee and

David Lee Fisher and Sylvia W. Fisher, appeared pro se on behalf of themselves, the Defendants,

hereinafter the Debtors.  After considering the evidence on record and the arguments of counsel,

this Court makes the following findings of fact and conclusions of law pursuant to Rule 7052 of

the Federal Rules of Bankruptcy Procedure:

**JURISDICTION**

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28

U.S.C. §§ 1334 and 157(a) and the General Order of Reference entered by the United States

District Court for the Middle District of North Carolina on August 15, 1984.  This is a core

1

proceeding under 28 U.S.C. § 157(b)(2)(I) which this Court may hear and determine.

## FINDING OF FACTS

The Debtors filed a voluntary Chapter 13 petition on September 13, 2002 (the "Petition").  The Debtors listed the following items on their Petition: (1) an Allegacy Federal Credit Union savings account, valued at $150.00, held by the female Debtor, (2) a Bank of America checking account, valued at $35.00, held by both Debtors, (3) a Sara Lee Credit Union savings account, valued at $35.00, held by the male Debtor, (4) 535 shares of Krispy Kreme stock (the "Stock"), valued at $16,585.00, held by the male Debtor, and (5) a 1997 Dodge Neon ("Neon"), valued at $5,000.00, owned by both Debtors.  Concurrently with the filing of their Petition, both Debtors  filed local 91C exemption forms.  The male Debtor exempted the Stock, valued at $16,585.00, and he exempted $35.00 from a checking account, listed as wages of a debtor necessary for support of the family.

The Chapter 13 proposed plan (the "Plan") provided for monthly payments of $1,815.00. In the Plan, the Debtors listed their daughter as a co-debtor and co-owner of the Neon.  The Plan provided for the stay to be lifted and for the release of the Neon to Regional Acceptance Corporation ("Regional") for liquidation.  Regional was given until April 22, 2003 to both liquidate the Neon and to file a deficiency claim with the Chapter 13 Trustee.  Otherwise, if no deficiency claim was filed, the release of the Neon would be deemed in full satisfaction of the Debtors' liability.  This court confirmed the Plan on December 23, 2002.  The Debtors remained in Chapter 13 for approximately three years and paid $51,422.53 into the Plan.

On June 10, 2005, the Debtors filed a notice of voluntary conversion to Chapter 7. Concurrent with the conversion, both Debtors filed new local 91C exemption forms.  Neither of

the Debtors exempted money in any of the bank accounts, nor did the male Debtor exempt the Stock. The Debtors' statement of intention form showed that the Neon would be retained, and the debt to Regional would be paid by the Debtors' daughter. The Debtors received their discharge on September 8, 2005.

On August 18, 2006, the Chapter 7 Trustee filed a complaint asking for a revocation of the Debtors' discharge pursuant to 11 U.S.C. § 727(d)(2). The Chapter 7 Trustee alleged that the Debtors failed to turnover or provide the monetary equivalent of (1) the Stock, (2) money in the Allegacy Federal Credit Union savings account, the Sara Lee Credit Union savings account, and the Bank of America checking account, and (3) the Neon. The Debtors filed an answer on December 27, 2006 (the "Answer").

At the trial on this matter, this Court was presented with testimony from the Debtors and evidence from the Chapter 7 Trustee regarding the status of the above mentioned items. During the male Debtor's tenure of approximately ten years at Krispy Kreme, he acquired the Stock through company stock options. The Stock had a market value of $16,585.00 on the date the Debtors filed the Petition. In 2005, the male Debtor was laid off from Krispy Kreme. Due to the male Debtor being laid off, the Debtors' Chapter 13 plan failed, and the Debtors converted to Chapter 7.

After the male Debtor was laid off in 2005, Krispy Kreme sold the Stock on its own initiative and sent the male Debtor a check for the value of the Stock in September or October of 2005. The Chapter 7 Trustee alleged that the male Debtor received $3,500.00, which is also the amount the male Debtor listed in the Answer. However, in court, the male Debtor asserted that he received $2,500.00. The Chapter 7 Trustee repeatedly requested that the Debtors turnover

either the Stock or the monetary equivalent of the Stock.  The male Debtor was aware that the

Chapter 7 Trustee requested either the Stock or the value of the Stock.  The male Debtor did not

comply with the Chapter 7 Trustee's requests.  The male Debtor decided to use the money in an

attempt to save his house, and he planned to pay the Chapter 7 Trustee with money from another

source.  The female Debtor never owned or controlled the Stock and the check for the Stock was

only issued to the male Debtor.

As to the bank accounts, both the Sara Lee Credit Union account and the Bank of

America account were closed at the time of conversion.  The $35.00 from the Sara Lee Credit

Union account was spent on the Debtors' bills.  The Bank of America account was closed by the

bank due to overdraft fees.  The Debtors currently owe Bank of America approximately $300.00

in bank fees.  The Allegacy Federal Credit Union savings account is now a joint savings account

worth slightly more than $150.00 and has not been touched by the Debtors.

The lien on the Neon was never paid through the plan.  The female Debtor testified that

she and her daughter paid $1,000.00 to complete the car payments.  The male Debtor never

contributed any money for the care of the Neon, and he never made any monthly payments on

the vehicle.

## DISCUSSION

I. Legal Background

11 U.S.C. § 727(d)(2) provides that on request of the trustee, a creditor, or the United

States trustee and after notice and a hearing, the court shall revoke a discharge granted under

subsection (a) of this section if the debtor acquired property that is property of the estate, or

became entitled to acquire property that would be property of the estate, and knowingly and

fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee.  11. U.S.C. § 727(d)(2).  *E.g., Matter of Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992); *In re Roberson*, 187 B.R. 159, 166 (Bankr. E.D. Va. 1995); *In re Lyons*, 23 B.R. 123, 125 (Bankr. E.D. Va. 1982).  The burden of establishing that a discharge should be revoked pursuant to § 727(d)(2) is on the objecting party.  *In re Roberson*, 187 B.R. at 166; Fed. R. Bankr. P. 4005.  The objector must meet this burden by proving its case by a preponderance of the evidence.  *Farouki v. Emirates Bank Intern., Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994).  The request for revocation pursuant to §727(d)(2) must be made before the later of (A) one year after the granting of such discharge; and (B) the date the case is closed.  11 U.S.C. § 727(e).

11 U.S.C. § 727(d)(2), is construed liberally in favor of the debtor and strictly against any objector.  *In re Silver*, 367 B.R. 795, 800 (D.N.M. 2007); *In re Vereen*, 219 B.R. 691, 694 (Bankr. D.S.C. 1997).  The terms, "knowingly and fraudulently" in the statute require fraud in fact, which involves moral turpitude or intentional wrong and does not include implied fraud or fraud in law.  *In re Roberson*, 187 B.R. at 166; *In re Puente*, 49 B.R. 966, 969 (Bankr. W.D.N.Y. 1985).  In essence, the court must find that the debtor knowingly intended to defraud the trustee, or engaged in such reckless behavior as to justify the finding of fraud, mere failure to report by the debtor is not sufficient.  *Matter of Yonikus*, 974 F.2d at 905 (finding that the debtor showed "a pattern of fraudulent deception" sufficient to revoke discharge, when the debtor provided evasive responses and attempted fraudulent transfers of three parcels of real estate); *In re Puente*, 49 B.R. at 969 (finding that awareness and knowledge of a future interest is not enough to establish that the debtors' failure to report the future interest was made knowingly and

5

fraudulently); *In re Lyons*, 23 B.R. at 126 (finding that the misrepresentation alone is insufficient ground to revoke the debtor's discharge when the debtor initially failed to list $3,800 in back wages on his petition and subsequently spent the money before the meeting of the creditors and the amendment of his schedules).  The court may also look to inferences drawn from a course of conduct and inferences from all the surrounding circumstances to determine if there is fraudulent intent.  *Matter of Yonikus*, 974 F.2d at 905.

II. Analysis

The Chapter 7 Trustee filed the complaint for revocation of discharge on August 18, 2006.  Hence the request for revocation of a discharge was made within the statutory period set forth in §727(e).

The court does not find that the Chapter 7 Trustee has carried the burden of demonstrating the existence of fraud with regard to the Debtors' use of the money in the bank accounts or the Neon.  The Debtors listed on their Petition that they had $150.00 in the Allegacy Federal Credit Union savings account, $35.00 in a Bank of America checking account, and $35.00 in a Sara Lee Credit Union savings account.  The court has determined that the money in the bank accounts was used either to pay bills or taken by the bank due to overdraft fees. Furthermore, the Chapter 7 Trustee has not proven that the money was available at the time of the conversion to Chapter 7 or not exempt as wages.  With regard to the Neon, the Plan clearly states that the Debtors had released their interest in the Neon and that the stay was lifted prior to the conversion to Chapter 7.  The fact that the Plan expressly provided for disposition of the Neon supports a finding that the Debtors did not knowingly intend to defraud the Chapter 7 Trustee or engage in reckless behavior as to justify the finding of fraud.

However, this Court finds that the Chapter 7 Trustee has carried his burden of demonstrating the existence of fraud as to the male Debtor regarding the Stock.  The male Debtor listed the Stock on the local 91C exemption form filed concurrently with the Petition.  After converting to Chapter 7, the male Debtor filed another local 91C exemption form, which did not list the Stock.  Krispy Kreme sold the Stock in 2005, after the male Debtor was laid off.  The male Debtor received either $2,500.00 or $3,500.00, representing the value of the Stock, from Krispy Kreme several months after the conversion to Chapter 7.  The male Debtor refused to turnover the Stock or the value of the Stock to the Chapter 7 Trustee.  The male Debtor was aware that the Chapter 7 Trustee had requested the money, but instead he decided to use the money in an attempt to save his house.  As such, the court concludes that the male Debtor committed fraud by not turning over the Stock or the value of the Stock to the Chapter 7 Trustee.  The female Debtor never owned or controlled the Stock, so the court concludes that the female Debtor did not knowingly intend to defraud the Chapter 7 Trustee or engage in reckless behavior as to justify the finding of fraud.

## CONCLUSION

Following the spirit and purpose of a Chapter 7 discharge and for the reasons stated above, the Court concludes that the female Debtor's discharge shall not be revoked and that the male Debtor's discharge shall be revoked.

IT IS SO ORDERED.

7

**SERVICE LIST**

**ALL PARTIES OF RECORD AS OF THE DATE OF THE ORDER SHALL BE SERVED BY THE BANKRUPTCY NOTICING CENTER**